UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TYRONE L. GARNER,<br><br>        Plaintiff,<br><br>vs.<br><br>ROBERT ASHCRAFT, et al.,<br><br>        Defendants. | 3:03-CV-0534-JCM (RAM)<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

       This Report and Recommendation is made to the Honorable James C. Mahan, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

       Before the court is Defendants' Motion for Summary Judgment (Doc. #26) filed on August 25, 2005. Plaintiff filed an Opposition (Doc. #37), to which Defendants have replied (Doc. #42).

## BACKGROUND

       Plaintiff is an inmate of the Nevada Department of Corrections and filed a civil rights complaint under 42 U.S.C. § 1983 against several prison officials at Ely State Prison (hereinafter "ESP"). Plaintiff's claims are based upon an alleged mishandling of his mail in October 2001 by ESP officials (Count I), which allegedly interfered with his right to access the courts in his petition for habeas corpus (Count III). (Doc. #22.)

       Defendants' Motion for Summary Judgment seeks dismissal on several grounds: (1) section 1983 liability does not allow suits against state officers in their official capacity; (2) Defendants Ashcraft and Neven are not causally linked to the alleged violations; (3) Plaintiff suffered no injury on Count III;

(4) Defendants Perkins and Lightsey are not constitutionally culpable; and (5) all Defendants are entitled to a qualified immunity. (Doc. #26.)

## STATEMENT OF FACTS

All of Plaintiff's allegations occurred while he resided at ESP. (Docs. #22, 26, 37.) At all relevant times at ESP, Defendant Ashcraft was employed as the legal mail officer (Doc. #26, Exh. K),[1] Defendant Lightsey was in charge of the property/mail room (Doc. #26:I), Defendant Neven was the Associate Warden of Operations (Doc. #26:L), and Defendant Perkins was employed as a senior correctional officer (Doc. #26:F).

On October 5, 2001, Plaintiff and inmate Jeremy Kelly received legal mail. (Docs. #22, 26, 37.) Inmate Kelly received one box and Plaintiff received two boxes of legal mail; however, Defendant Perkins opened all three boxes in inmate Kelly's presence with Plaintiff absent. (Doc. #26:F; Doc. #37:7.) Both parties concede that this was done in error, and against the prison's Administrative Regulations (hereinafter "AR") (*see* Doc. #26:G, H), due to the fact that inmate Kelly's box was stacked on top of Plaintiff's boxes (Doc. #26:F). That is, when inmate Kelly was brought to the mail room, Defendant Perkins checked his identification and matched it to the first box in a stack of three. (Doc. #26:F; Doc. #37:7, 36.) Apparently, Defendant Perkins assumed the entire stack belonged to inmate Kelly, without checking, and proceeded to open and inspect all three boxes for contraband in Kelly's presence.[2] (Docs. #26:F; Doc. #37:36.)

---

[1] All further references to attached exhibits shall follow a colon after the docket number. Thus, a citation to Doc. #26:K, for example, references Exhibit K to Defendants' Motion for Summary Judgment.

[2] At this point, Plaintiff contends that inmate Kelly was also searching through all three boxes and assisted Defendant Perkins in removing items. (Doc. #37; *contra* Doc. #26:F.) To that extent, a report authored by Defendant Lightsey to Defendant Neven on October 9, 2001 states that Defendant Lightsey saw inmate Kelly looking through papers and removing metal fasteners. (Doc. #26:J.)

According to inmate Kelly, he initially helped sort and separate his material from Plaintiff's material. (*Id.*) When he got back to his cell, inmate Kelly reviewed all of the contents of his package, and returned those items that were not his to prison officials. (*Id.*)

2

Defendant Lightsey came onto the scene during Defendant Perkins' search for contraband. (Doc. #26:F; Doc. #37:6.) Defendants Perkins and Lightsey and inmate Kelly discovered that the two of the boxes belonged to Plaintiff soon thereafter. (Doc. #26:F, I; Doc. #37:6, 7.) Defendants Perkins and Lightsey attempted to sort through the materials and divide them up appropriately. (Doc. #26:F, I; Doc. #37:5, 6.) Inmate Kelly was told to return any of Plaintiff's documents to prison officials if he later found them in his possession by mistake. (Doc. #26:F, I; Doc. #37:5. *Contra* Doc. #26:J; Doc. #37:6.) Defendant Perkins only notified his supervisor of the incident. (Doc. #37:36.) Defendant Lightsey did not inform Plaintiff of the error that occurred. (Doc. #37:47.)

Later that evening, Defendant Ashcraft delivered the two boxes of mail to Plaintiff. (Doc. #26:K; Doc. #37:4.) Defendant Ashcraft performed the customary search for contraband pursuant to the prison's ARs. (Doc. #26:K; Doc. #37:4, 39.) Defendant Ashcraft knew what happened, but did not inform Plaintiff that his mail had already been opened earlier that day. (Doc. #26:K; Doc. #37:4, 6, 39.) Plaintiff found out about the search of his mail from inmate Kelly later that evening. (Doc. #26:K; Doc. #37:4, 7.)

Plaintiff filed several inmate interview requests with Defendant Neven, which complained of the mishandling of his mail. (Doc. #26:A, L; Doc. #37.) Defendant Neven met with Plaintiff, inmate Kelly, and Defendant Lightsey on October 15, 2001. (Docs. #26, 37.) Inmate Kelly said he returned whatever papers of Plaintiff's that were found amongst his own to a correctional officer. (Doc. #26:L; Doc. #37:7.) Neither Plaintiff nor inmate Kelly could identify that correctional officer. (Doc. #26:L; *see* Doc. #37:7.) Also, Plaintiff could not tell Defendant Neven what legal documents he believed were missing. (Doc. #26:L; *see* Doc. #37:4.) Defendant Neven then told Plaintiff that it was unlikely that any of his documents could be recovered. (Doc. #37:4; *see* Doc. #26:L.)

///
///
///
///

3

1    Not believing that he recovered everything that was sent,[3] Plaintiff contacted many people.
2 (*E.g.*, Doc. #37:24-26.)  Plaintiff wrote to his appellate attorney who sent the material to ESP, Ms.
3 JoNell Thomas, and asked for a list of all the documents that were sent. (Doc. #37:4, 14, 24.)
4 However, Ms. Thomas was of no assistance—her office shipped Plaintiff's entire file to ESP, and did
5 not keep any record of the materials sent. (Doc. #26:C; Doc. #37:4, 14.) Plaintiff also wrote to his
6 trial counsel, Mr. David Schieck, to no avail. (Doc. #37: 23.)

7    Plaintiff filed a petition for writ of habeas corpus on December 11, 2001.[4] (Doc. #37:27.)
8 He raised multiple arguments in that petition, including ineffective assistance of counsel for failure
9 to investigate witnesses whose testimony could have affected the outcome of the trial, and the
10 unconstitutionality of the jury instructions used in his trial. (Doc. #26:D.)  The state court denied
11 Plaintiff's habeas petition in its entirety on February 5, 2002. (*Id.*)

## LEGAL STANDARD

13    A party may move for summary judgment under Federal Rule of Civil Procedure (hereinafter
14 "FRCP") 56©) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together
15 with the affidavits, if any, show that there is no genuine issue as to any material fact and that the
16 moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©); *Celotex Corp. v.*

---

[3]In the Complaint, Plaintiff alleges that he is missing the following materials: (1) arrest reports/warrant; (2) probable cause documents; (3) search and seizure documents; (4) forensic reports; (5) videotape of crime scene; (6) booking reports; (7) property reports and evidence records; (8) detective's investigation reports; (9) grand jury discovery; (10)witness statements; (11) involuntary consent to search forms; (12) newspaper articles pertaining to criminal proceedings; (13) pages of trial transcript; (14) audio cassette tapes; and (15) other unknown materials relevant to criminal case.  (Doc. #22.) Plaintiff's Opposition, however, only contains arguments regarding the jury instructions and witness statements. (Doc. #37.)

[4]According to Plaintiff, he filed that petition without having his jury instructions or the relevant witness statements, because they were lost on October 5, 2001. (Doc. #37.) Plaintiff alleges that sometime on or around September 26, 2002, another inmate, Rudy Rodriguez, found some of Plaintiff's jury instructions and portions of his trial transcript in an activity day room. (Doc. #37:8; *contra* Doc. #42.)

1  *Catrett*, 477 U.S. 317, 322 (1986). The facts are viewed in the light most favorable to the non-moving
2  party. *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989).

3  Material facts are those which would affect the outcome of the case under the substantive law.
4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is no genuine issue on a
5  material fact means that a rational fact-finder must not be able to find in favor of the nonmovant. *Id.*;
6  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In ruling on summary
7  judgment, the court does not weigh the evidence to determine the truth of the matter, but "only
8  determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th
9  Cir. 1994).

10  Where the moving party bears the burden of proof at trial, the moving party must "establish
11  beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his
12  favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). This must be shown through
13  affidavits or some other form of admissible evidence. *Id.* Conversely, where the moving party does not
14  bear the burden of proof at trial, he only has to show the court that there is no genuine issue of material
15  fact, *Celotex Corp.*, 477 U.S. at 323, on at least one of the essential elements of the other party's claim,
16  *Fontenot*, 780 F.2d at 1195. This may be accomplished by either producing affirmative evidence to
17  negate a material fact in the opposition's case, or by pointing out the absence of a genuine issue on a
18  material fact in the opposition's case. *Celotex Corp.*, 477 U.S. at 325. In either instance, if the moving
19  party meets his initial burden of production, the nonmovant who bears the ultimate burden at trial
20  "must set forth specific facts showing that there is a genuine issue for trial[,]" Fed. R. Civ. P. 56(e), and
21  may not rely on mere allegations. *Anderson*, 477 U.S. at 248.
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

5

## DISCUSSION

At the outset, it should be noted that because Plaintiff is an inmate appearing pro se, the court will construe his pleadings and motions liberally, and afford him the benefit of any doubt in this motion for summary judgment.[5] *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

A. Counts II, IV, V, VI, and VII

Plaintiff's complaint was screened twice pursuant to 28 U.S.C. § 1915(e). (Docs. #6, 9.) The original complaint had three claims, one of which was screened out. (Doc. #6.) Thereafter, Plaintiff filed a Second Amended Complaint with seven claims. (Doc. #8.) Five of the seven claims were dismissed in the screening process, leaving only Counts I and III. (Doc. #9.)

In the second screening, the court dismissed Count II of the Second Amended Complaint, an Equal Protection claim, because Plaintiff failed to allege any facts indicating that Defendants deliberately singled out his mail for mishandling. (Doc. #9.) Plaintiff's state tort claims for emotional distress, Counts IV and V, were dismissed because there were no allegations of any resulting physical injury. (*Id.*) Count VI was dismissed as a redundant. (*Id.*) Finally, Count VII, the Eighth Amendment claim, was dismissed because Plaintiff failed to allege sufficient facts to state a claim. (*Id.*)

On February 28, 2005, Plaintiff filed a Motion for Leave to Amend Complaint wherein Plaintiff sought to substitute Defendant Perkins for a doe defendant. (Doc. #16.) The court granted the motion. (Doc. #21.) Plaintiff's Third Amended Complaint, however, reasserted seven claims against Defendants. (Doc. #22.) Each count in Plaintiff's Third Amended Complaint is an exact mirror of the Second Amended Complaint. (*Compare* Doc. #22 *and* Doc. #8.) There are no material changes between them, with the exception of the identification of Defendant Perkins. Thus, for the reasons summarized above, and fully discussed in the court's previous screening order (Doc. #9), Counts II, IV, V, VI, and VII must be dismissed from Plaintiff's Third Amended Complaint. Those allegations fail to state a claim for which relief can be granted.

---

[5]Plaintiff should nevertheless remain mindful of the Local Rules. His Opposition (Doc. #37) is forty-three typed pages. That is about forty-three percent larger than the maximum page limit allowed by Local Rule 7-4.

6

B. Counts I and III

In Count I, Plaintiff claims all Defendants violated his right to privileged communications with his attorney. (Doc. #22.) Count III alleges that all Defendants are liable for interfering with Plaintiff's right of access to courts. (*Id.*) Defendants raise five separate arguments in support of their Motion for Summary Judgment. The court will deal with each in turn.

1. Counts I & III: Defendants Cannot Be Sued in Their Official Capacity for Money Damages

Defendants argue that the court should grant at least partial summary judgment in their favor to the extent that Plaintiff has sued them in their official capacities. (Docs. #26, 42.) Under *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989), state officials in their official capacity are not "persons" for the purposes of section 1983 claims. Because a suit against a state official in his official capacity is essentially an action against their office, and would be paid from state funds, the Supreme Court refused to read section 1983 as a pleading device around the Eleventh Amendment. *Id.*; *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988).

Section 1983 only allows suits against state officials in their individual capacities, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), where money damages are sought, *Wolfe v. Strankman*, 392 F.3d 358, 364-65 (9th Cir. 2004). Accordingly, Defendants' Motion for Summary Judgment should be granted on all counts to the extent Plaintiff asserts section 1983 claims against all Defendants in their official capacities for money damages. Plaintiff's claim for declaratory relief against Defendants in their official capacities (Doc. #22), however, should remain (Doc. #37). *Wolfe*, 392 F.3d at 354-65.

2. Counts I & III: Defendants Ashcraft and Neven Had No Personal Involvement

Defendants argue that because liability under section 1983 depends on personal participation, Plaintiff cannot state a claim against Defendants Ashcraft and Neven. (Doc. #26.)

(I) Defendant Ashcraft

According to Defendant Ashcraft, because he was not personally involved in the actual mishandling of Plaintiff's mail, he cannot be held liable under section 1983 on Counts I or III. (Doc. #26.) Defendant Ashcraft attempts to distinguish himself from Defendants Perkins and Lightsey by arguing that he was not present when Plaintiff's mail was mishandled. (*Id.*) He also takes the position

7

1  that he should not be held liable for failing to inform Plaintiff because he was unaware of the complete
2  story, and because he believed that the matter would be addressed to Plaintiff at a later time. (*Id.*)
3  Plaintiff, on the other hand, alleges that Defendant Ashcraft should be liable because he did not take
4  any affirmative steps to reorganize Kelly and Plaintiff's mail, and because he silently delivered Plaintiff's
5  mail knowing that it was incomplete. (Doc. #37.)

6  Section 1983 liability may be based on a state official's omission as long as it was an omission
7  to perform a legally obligated act which caused the alleged constitutional deprivation. *Lee v. Murphy*,
8  844 F.2d 628, 633 (9th Cir. 1988). To that extent, it is undisputed that Defendant Ashcraft was a legal
9  mail officer at ESP (Doc. #26:K), and under AR 750, he was required to deliver Plaintiff's
10 correspondence directly to him (Doc. #26:G (section V.E at p. 2)), and to open it only in the presence
11 of Plaintiff (Doc. #26:G (section V.D at p. 4)).[6] The problem here is that "[t]he 'requisite causal
12 connection [under section 1983 requires] . . . some kind of direct personal participation in the
13 deprivation, . . . [or] [the] setting in motion a series of acts by others which the actor knows or
14 reasonably should know would cause others to inflict the constitutional injury.'" *Gilbrook v. City of*
15 *Westminster*, 177 F.3d 839, 854 (9th Cir. 1999) (quoting and citing *Johnson v. Duffy*, 588 F.2d 740, 743-
16 44 (9th Cir. 1978)).

17 Here, it is an undisputed material fact that Defendant Ashcraft did not directly participate in
18 the alleged deprivation because Defendant Ashcraft was not even present when Plaintiff's mail was first
19 opened, as Defendants Perkins and Lightsey were. (Doc. #26:K; Doc. #37:2, 52.) Moreover, it is not
20 alleged that Defendant Ashcraft set a series of acts in motion. There are no conspiracy type allegations
21 or allegations of ill-will, for example. Indeed, Defendant Ashcraft did not even summon inmate Kelley

---

[6]Under AR 750, privileged incoming mail must be opened and examined by prison officials in the presence of the addressee. (Doc. #26:G (section V.D at p. 4).) Plaintiff asserts the legal mail in question was privileged. (Docs. #8, 37.) Defendants do not contest this fact. (*See* Doc. #26 (part IV.F).)

At this time, the court notes that subsections of AR 750 section V are misnumbered. For better understanding, the court has cited to the specific page numbers in Exhibit G to Defendants' Motion for Summary Judgment.

8

to the mail room. (Doc. #37:2.) He was busy making other deliveries at that time. (Doc. #26:K.) Defendant Ashcraft did not come into the picture until after the alleged violation occurred. Someone had to eventually deliver Plaintiff's mail(Doc. #26:G (part V.D at p. 2)), and by chance, Defendant Ashcraft happened to be the "bearer of bad news."[7] That, however, is insufficient to establish his liability under section 1983. There is no connection between Defendant Ashcraft and the alleged mail interference.

Plaintiff also attempts to establish a causal link by asserting that Defendant Ashcraft should have taken corrective or remedial measures. (Doc. #37.) Plaintiff argues that because Defendant knew of the alleged violation, he should have immediately gotten inmate Kelly and Plaintiff together in one room, and allowed them to sort through their materials. (*Id.*) That argument is without merit, however, because it does not change the fact that Defendant Ashcraft was not the cause of Plaintiff's mishandled mail, and Plaintiff does not provide any authority which would impose such an affirmative duty under these circumstances.

Whatever power or authority Defendant Ashcraft may have possessed as a mere mail room employee to take such extreme corrective measures was limited at best. All parties agree that Defendant Ashcraft was only a "correctional officer" at ESP, as compared to Defendant Perkins, a senior correctional officer, and Defendant Lightsey, the mail/property room supervisor. (Doc. #26:F, I, K; *accord* Doc. #37.) *See, e.g.*, *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (affirming summary judgment in favor of supervisory defendants who were not present during the alleged violation, and were not linked to any policy that condoned violative conduct). Also, all parties agree that some degree of "corrective measures" had already been set in place, *i.e.*, inmate Kelly was instructed to return Plaintiff's mail if he found any. (Doc.#26:F, I, K; Doc. #37:7.) Given that, Defendant Ashcraft's ranking as an officer, and the fact that AR 750 forbids prison officials and non-addressee inmates to peruse through another inmate's privileged mail (Doc. #26:G), the court cannot find that Defendant

---

[7]AR 750 requires that, "[e]xcept un cases of emergency, mail shall not be held longer than twenty-four (24) hours." (Doc. #26:G (part V.D at p. 2).)

9

1 Ashcraft's failure to take affirmative steps to fix the situation "significantly contributed to loss of
2 Plaintiff's legal documents" (Doc. #37).

3 Defendants' Motion for Summary Judgment should be granted as to Defendant Ashcraft on
4 Counts I and III because there is no genuine issue as to his lack of personal involvement and causal
5 link to this matter.

6 (ii) Defendant Neven

7 Defendant Neven argues that summary judgment should be granted in his favor as well for a
8 lack of causation. (Doc. #26:L.) As in this case, defendant supervisors are rarely found liable based
9 on any alleged direct participation. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).
10 Defendant Neven, like Defendant Ashcraft, did not directly participate in the opening of Plaintiff's mail
11 in front of inmate Kelly, and there are no allegations to the contrary. There are no facts showing that
12 Defendant Neven was involved in the mishandling until Plaintiff formally complained. (*See* Doc.
13 #26:L.)

14 Individual liability for supervisors, however, may also be found based on their "'own culpable
15 action or inaction in the training, supervision, or control of [their] subordinates,' for [their]
16 acquiesce[nce] in the constitutional deprivations..., or for conduct that showed a '"reckless or callous
17 indifference to the rights of others."'" *Larez*, 946 F.2d at 646 (internal citations omitted). Plaintiff
18 argues Defendant Neven is liable based on his acquiescence to the mishandling incident, as evidenced
19 by his alleged failure to conduct a more serious investigation into the matter. (Doc. #37.) To that
20 end, Defendant Neven submitted evidence showing that he directed Defendant Lightsey to provide
21 a report of the incident, and met with Plaintiff to discuss the issue. (Doc. #26:I, L.) According to
22 Plaintiff, Defendant Neven apologized to him and "chewed out Sgt. Lightsey for his and Perkins'
23 incompetence...." (Doc. #37:4.) Defendant Neven also asked Plaintiff what documents he believed
24 were missing; however, nothing could be specifically identified. (Doc. #26:L; Doc. #37:4, 40.)
25 Moreover, Defendant Neven attempted to trace Plaintiff's documents to the extent that inmate Kelly
26 alleged he found some of Plaintiff's materials mixed in with his own (Doc. #26:L; *see* Doc. #37:4, 7),

10

1    but neither inmate Kelly nor Plaintiff could identify which correctional officer received those materials
2    from inmate Kelly. (Doc. #26:L; Doc. #37:40; Doc. #42:A, B.)

3    Altogether, Defendant Neven has shown there are no facts that indicate he acquiesced to Plaintiff's alleged constitutional deprivation. Plaintiff's arguments, which concern how far the investigation should have gone (Doc. #37), are unsupported. *See, e.g.*, *Larez*, 946 F.2d at 646 (using the testimony of an expert who was "armed with both many years of practical police experience and empirical data on police department procedures and operations nationwide and in [the specific geographical area]," in order to determine whether the defendant supervisor's conduct constituted acquiescence). The court is unaware of any authority which would have required Defendant Neven to do more than what he did, or, as Plaintiff would have it, to do anything and everything in his power to restore legal documents that could not be identified from unknown persons. (*See* Doc. #42:A.)

The material facts concerning Defendant Neven's involvement in this matter are undisputed. Thus, the court finds that summary judgment should be granted in Defendant Neven's favor on Counts I and III.

3.  Count III:  Plaintiff Fails to State a Claim Because There Is No Actual Injury

Defendants' position is that Plaintiff cannot state a cognizable right of access claim in that he cannot prove he suffered an actual injury because Plaintiff cannot show what is allegedly missing.[8] (Docs. #26, 42.) Except where a prisoner's "right of access" claim is based on the inadequacy of law

---

[8] Defendants also argue that because Plaintiff's attorney in his criminal conviction could not produce the missing documents, or even tell Plaintiff what documents were missing, the "logical inference is that the documents never existed in the first instance." (Doc. #37.) That argument is completely irrational. The fact that the attorney could not give Plaintiff a list of the materials that were sent does not lead to such an inference. The attorney specifically stated that she could not help Plaintiff because her office did not keep a record of the materials sent. (Doc. #37:14.) The logical inference that can be drawn from that letter is that the attorney presumably sent the office's only copies to Plaintiff.

An affidavit from inmate Rudy Rodriguez (Doc. #37:8), who found some of Plaintiff's mail on a table in a prison day room, supports Plaintiff's allegations that certain materials existed and were in fact lost through the mishandling of his legal mail, Fed. R. Civ. P. 56©); *Lewis v. Casey*, 518 U.S. 343, 358 (1996).

11

1 libraries or other forms of legal assistance, courts must determine whether there was "some specific
2 "'instance in which [the] inmate was actually denied access to the courts.'"" *Sands v. Lewis*, 886 F.2d
3 1166, 1171 (9th Cir. 1989) (quoting and citing *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982)).)
4 To that extent, Plaintiff has repeatedly alleged that Defendants opened his legal mail outside his
5 presence, and caused several documents to be misplaced. (*See* Docs. #22, 37.) For example, Plaintiff
6 claimed the trial transcript and jury instructions, among other things, from his criminal convictions
7 were missing (Docs. #8, 37), and because they were missing he could not challenge allegedly erroneous
8 jury instructions.

9 The evidence shows, however, that the interference with Plaintiff's legal mail did not result in
10 an actual injury to Plaintiff's right of access to the courts. Under *Sands*, a plaintiff suffers an actual
11 injury only if Defendants' misconduct prevented him from "presenting" those claims in court. *Allen
12 v. Sakai*, 48 F.3d 1082, 1091 (9th Cir. 1994). Here, the state court's order on Plaintiff's habeas petition
13 (Doc. #26:D) specifically recited the fact that Plaintiff already challenged the constitutionality of his
14 jury instructions on direct appeal in the same manner he sought to challenge them in his habeas
15 petition, and therefore the law of the case doctrine applied. (*Id.*) That order shows Plaintiff's "right
16 to pass through the courthouse doors and present one's claim for judicial determination[,]" *Los Angeles
17 County Bar Ass'n v. Eu*, 979 F.2d 697, 706 (9th Cir. 1992), was fulfilled.[9] It would not have made a
18 difference whether Plaintiff actually possessed his jury instructions at the time of filing, because the
19 court found Plaintiff had already made the same challenge on direct appeal. (Doc. #26:D.)
20 Accordingly, summary judgment should be granted in Defendants' favor in that respect.

---

[9]The fact that Plaintiff presently attempts to couch his "lost" claim in different terms, *i.e.*, for ineffective assistance of counsel, makes no difference. *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 234-45 (1897) (holding substance over form controlled in determining due process of the law). In the past and present challenges, it is clear that Plaintiff's goal was to attack the constitutionality of his jury instruction on the belief that they included a mandatory presumption.

12

Defendants' Motion for Summary Judgment should be denied as to the two missing witness statements.[10] (*See* Doc. #37:4.) The state court's habeas order refused to entertain Plaintiff's claims because, without anything to substantiate Plaintiff's allegations, they were too flimsy and speculative. (Doc. #26:D.) Granted, the order, in and of itself, is proof that Plaintiff "accessed" the court system in a technical sense; however, it is not the type of "meaningful access" contemplated in *Bounds v. Smith*, 430 U.S. 817, 23 (1977). The court cannot find Plaintiff's right of access was fulfilled, or that he suffered no injury to that right, based on the mere fact that he could submit an empty petition. That would be like finding the mere existence of an adequate law library provides meaningful access to the courts even though inmates are not allowed a reasonable amount of time to use the library. *See Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985). Defendants have not shown that there is no genuine issue that Plaintiff has not suffered an actual injury.

    4. Counts I & III:  Defendants' Culpability Does Not Rise to Constitutional Levels

Defendants do not contest whether the legal mail in question was privileged. (*See* Doc. #26.) They do, however, argue that their failure to open Plaintiff's mail in his presence is not actionable because they were merely negligent, at the most. (Docs. #26, 42.) To that extent, it is well settled that "an official's negligent act does not implicate the due process clause. In the context of constitutional torts, it is the deliberate, intentional abuse of governmental power for the purpose of depriving a person of life, liberty or property that the fourteenth amendment was designed to prevent." *Stevenson v. Koskey*, 877 F.2d 1435, 1440-41 (9th Cir. 1989) (internal citations omitted); *accord Daniels v. Williams*, 474 U.S. 327, 333 (1986).

---

[10]Although Plaintiff does not specifically identify these witnesses in his Opposition (Doc. #37), their identities become apparent in Plaintiff's affidavit. (Doc. #37:4). There, Plaintiff launches into a discussion about a man named "Moose" whose testimony, according to Plaintiff, "would have went a long way toward defeating the conspiracy and murder charges." (Doc. #37:4.) The other witness was a woman named "Chicago," whose testimony would have proved that another witness falsely testified in exchange for $10,000 paid by the police. (*Id.*) Plaintiff alleged these two witness statements were taken by his cousin Gregory, and sent with all this other legal material by his attorney. (*Id.*)

There is sufficient evidence showing that Defendant Perkins opened Plaintiff's mail in front of inmate Kelly by mistake, and that Defendant Lightsey's participation in the alleged violation was also inadvertent. Defendant Perkins was supposed to, and should have, checked the addressee on each of the three boxes before he opened them. He failed to do so because the boxes were stacked on top of each other, and he erroneously assumed they all belonged to inmate Kelly, whose box was at the top of the stack. (Doc. #26:F; Doc. #37:36.) Defendant Perkins maintains that that failure was unintentional (Doc. #26:F; Doc. #37:36), and inmate Kelly's account of the incident supports that finding (Doc. #37:7). There are no facts or allegations that Defendant Perkins acted with anything other than carelessness at that time. Indeed, Plaintiff only characterizes Defendant Perkins's actions as "plainly incompetent." (Doc. #37.) While that may be true, however, the court cannot find that his incompetence in this isolated incident rises to the level of a constitutional violation. *Koskey*, 877 F.2d at 1441.

As for Defendant Lightsey, he took no part in the selection of boxes. By the time Defendant Lightsey entered the story, the boxes were already opened and Defendant Perkins was removing unauthorized contraband. (Doc. #26:F, I; *but see* Doc. #37:7.) Furthermore, to the extent Defendant Lightsey may have participated in the examination of Plaintiff's materials in the presence of inmate Kelly, the court also finds that there is no question that he did so by mistake as well. To support this finding, Defendants showed that at one point Defendants Perkins and Lightsey and inmate Kelly were all examining the contents of the legal packages, and none of them were aware of the fact that the latter two boxes belonged to Plaintiff. (*See* Doc. #26:F, I; Doc. #37:7.) In fact, the discovery of their error was made when Defendant Lightsey saw a photograph in Plaintiff's box and then directed a question to inmate Kelly under the assumption that the photograph was his. (Doc. #26:F, I; Doc. #37:6.) When the three of them discovered their mistake, Defendants Perkins and Lightsey immediately tried to reorganize the materials to their respective recipients.[11] (Doc. #26: F, I; Doc. #37:7.)

---

[11] At that point, Defendants asked inmate Kelly to stop touching the materials (Doc. #26:F, I; Doc. #37:7), which was presumably done with AR 750 in mind (Doc. #26:G).

14

All of the evidence presented by Defendants, and even Plaintiff, supports the court's finding that the mishandling of Plaintiff's mail was a mere accident arising from Defendants' negligence. Although their inadvertence and plain incompetence cannot be condoned by any court, it is not actionable under section 1983. *Daniels*, 474 U.S. at 332-33; *Koskey*, 877 F.2d at 1441. As such, because there is no genuine issue that Defendants Perkins and Lightsey were merely negligent, summary judgment should be granted in their favor.

### 5. Defendants Are Entitled to a Qualified Good Faith Immunity

Defendants assert they are immune from suit, as opposed to liability, due to a qualified immunity. (Doc. #29.) Whether a qualified immunity applies in favor of a section 1983 defendant depends on two main questions:

> As a threshold matter we take the facts in the light most favorable to the [plainitff], and ask whether those facts show that the officers' conduct violated a constitutional right. . . .
> The next question is whether the constitutional right that would be violated was clearly established. This is "a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" However, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (internal citations omitted).

The court finds that qualified immunity does not apply in this case as a threshold matter. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). There must be a constitutional violation, or else the inquiry ends. *Id.*; *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005). Here, the court has already found that Defendants did not violate Plaintiff's constitutional rights because Defendants Ashcraft and Neven lacked causation, and Defendants Perkins and Lightsey were merely negligent. As such, qualified immunity is a nonissue. *Motley v. Parks*, 432 F.3d at 1077.

///
///
///
///

15

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #26).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c)) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: February 1, 2006.

_____
UNITED STATES MAGISTRATE JUDGE